IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. _____

RONALD DWAYNE BROWN,

Plaintiff,

v.

THE CITY OF COLORADO SPRINGS,

PETER CAREY, Chief of Police, Colorado Springs Police Department, in his official capacity,

VINCE NISKI, Deputy Chief of Police, Colorado Springs Police Department, individually and in his official capacity,

ARTHUR "SKIP" ARMS, Commander, Colorado Springs Police Department, individually and in his official capacity,

Lt. SALVATORE FIORILLO III, Unit Commander, Tactical Enforcement Unit (Swat Team), Colorado Springs Police Department, individually and in his official capacity,

Sgt. RONALD SHEPPARD, Colorado Springs Police Department, individually,

Sgt. CHRIS ARSENEAU, Colorado Springs Police Department, individually,

Officer DAN CARTER, Colorado Springs Police Department, individually,

Officer WILLIAM P. BETTS, Colorado Springs Police Department, individually,

Officer ROBIN McPIKE, Colorado Springs Police Department, individually,

Officer SHAWN MAHON, Colorado Springs Police Department, individually,

Officer MARCUS VAN OONYEN, Colorado Springs Police Department, individually,

Sgt. RUSSELL(FNU), Colorado Springs Police Department, individually,

Defendants.


**AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, by and through his attorneys, Shimon Kohn of the Shimon Kohn, P.C. Law Firm, Ann Kaufman of the Ann Kaufman, P.C. Law Firm, and Joshua Tolini of Barker and Tolini P.C., respectfully allege for their Complaint as follows:

Plaintiff, **RONALD D. BROWN**, by and through his undersigned counsel, for his complaint state as follows:

## INTRODUCTION

1.      This is an action for damages against Defendants City of Colorado Springs, Peter Carey, Skip Arms, Vince Niski, Salvatore Fiorillo, Ronald Sheppard, Chris Arseneau, Dan Carter, Rob McPike, Marcus VanOonyen, William Betts, Shawn Mahon, Sgt. Russell of the Colorado Springs Police Department.

2.      Defendants intentionally, knowingly, recklessly, and with deliberate indifference to Plaintiff's constitutional rights, unlawfully entered his residence and subjected him to an intrusive and illegal use of excessive force.

3.      Defendants' conduct was performed under color of state law and directly or proximately caused the deprivation of Plaintiff's federally protected rights.  Defendants Colorado Springs, Carey, Niski, Arms and Fiorillo have a continuing, persistent and widespread practice of unconstitutional misconduct by its police officers engaging in unlawful entry and excessive force.  Defendants Colorado Springs, Carey, Niski, Arms and Fiorillo exhibit deliberate indifference to or tacit approval of its police officers' misconduct, which is Colorado Springs official custom, policy, or practice.  That custom, policy, or practice was the moving force behind Defendants' unconstitutional acts.

4.      Defendants Colorado Springs, Carey, Niski, Arms and Fiorillo failed to train and supervise Defendants, Officers of the Colorado Springs Police Department, concerning the Fourth Amendment and use of excessive force during the execution of search warrants. Defendants Colorado Springs, Carey, Niski, Arms and Fiorillo tacitly approved of these officers' conduct by retaining their employment, disregarding citizen complaints of excessive force against them, and/or completely failing to discipline them.

## JURISICTION AND VENUE

5.     Jurisdiction over these claims is conferred upon this Court pursuant to 28 U.S.C. § 1331 and § 1343(a)(3), and this case is brought pursuant to 42 U.S.C. § 1983.  Jurisdiction supporting Plaintiffs' claims for attorney fees is conferred by and brought pursuant to 42 U.S.C. § 1988.

6.     Venue is proper in the District of Colorado pursuant to 28 U.S.C § 1391(b).  All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at all relevant times stated herein.

## PARTIES

7.     Plaintiff, Ronald Brown, at all times relevant to this Compliant, was and is a citizen of the United States of America and resident of the State of Colorado.  Plaintiff, Ronald Brown, a 56 year old army veteran, resided at 4854 Rusty Nail Point #102, Colorado Springs, Colorado, 80916.

8.     Defendant, CITY OF COLORADO SPRINGS, is a municipal corporation and, at all times relevant hereto, operated a Police Department pursuant to policies and procedures as well as customs and practices.

9.     Defendant, PETER CAREY, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Carey is sued in his official capacity as the Chief of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs, and was acting under the color of state law.

10.     Defendant, VINCE NISKI, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado. Defendant Niski is sued in his individual and official capacity as the Deputy Police Chief of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs, and was acting under color of state law.

11.     Defendant, ARTHUR SKIP ARMS, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado. Defendant Arms is sued in his individual and official capacity as the Commander of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs, and individual capacity and was acting under color of state law.

12.     Defendant, LT. SALVATORE FIORILLO III, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Fiorillo is sued in his individual and official capacity as the Unit Commander of the Tactical Enforcement Unit (TEU)(Swat Team) of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

13.     Defendant, Sgt. RONALD SHEPPARD, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Sheppard is sued in his individual capacity as a Sergeant of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

14.     Defendant, Sgt. CHRIS ARSENEAU, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Arseneau is sued in his individual capacity as a Sergeant of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

15.     Defendant, Officer DAN CARTER, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Carter is sued in his individual capacity as a Police Officer of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

16.     Defendant, Officer WILLIAM BETTS, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Betts is sued in his individual capacity as a Police Officer of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

17.     Defendant, Officer ROBIN MCPIKE, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant McPike is sued in his individual capacity as a Police Officer of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

18.     Defendant, Officer MARCUS VAN OONYEN, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Van Oonyen is sued in his individual capacity as a Police Officer of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

19.     Defendant, SHAWN MAHON, at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Mahon is sued in his individual capacity as a Police Officer of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

20.     Defendant, SGT. RUSSELL (FNU), at all times relevant hereto, was and is a citizen of the United States and a resident of the State of Colorado.  Defendant Russell is sued in his individual and official capacity as a Sergeant of the Colorado Springs Police Department, employed by the Defendant City of Colorado Springs and was acting under color of state law.

## FACTS

21.     Under the direct supervision of Peter Carey, Vince Niski, Skip Arms and Salvatore Fiorillo, the Colorado Springs Police Department have come to rely upon the Tactical Enforcement Unit of the Police Department to execute routine search warrants.  This unit is in essence a military strike force.  The policy of using this military strike force on routine search warrant executions directly led to the injuries Mr. Brown suffered.

22.     On May 27, 2012 Kyre Davis, a neighborhood teenager, damaged a tree to Mr. Brown's property at 4854 Rusty Nail Point, Colorado Springs, Colorado.  Mr. Brown verbally reprimanded the young man.

23.     Mr. Davis returned home and told his parents, Lawson Garrsion and Jocqueline Bennet, of the altercation.  Mr. Garrison and Ms. Bennet went to Mr. Brown's residence to confront him over the incident with their son.  On the way to Mr. Brown's home, they were joined by James Ruff, who went to back up Mr. Garrison.

24.     Mr. Garrison, who is approximately 6 feet 4 inches tall, was armed with a baseball bat.  Mr. Garrsion, Ms. Bennet, and Mr. Ruff stood outside of Mr. Brown's home screaming for him to come outside.   When Mr. Brown came out of his home, a verbal argument ensued.  Mr. Brown remained upon his property for the entirety of the confrontation.

25.     During a period in the altercation, Mr. Garrison held his baseball bat at arms length near Mr. Brown's head.  Feeling the threat of imminent bodily injury, Mr. Brown removed a pistol from his pocket.  Mr. Brown fired one warning shot into the ground and then returned to his home.

26.     The Colorado Springs Police Department was called to the scene.  The responding officers interviewed Mr. Garrison, Ms. Bennet, Mr. Ruff, and Mr. Davis.  Patrol officers made attempts to contact and interview Mr. Brown, but they were unsuccessful.  The officers believed that they may have had probable cause to charge Mr. Brown with felony menacing.  Due to the nature of the charges, the officers determined that no further action was necessary that evening.

27.     The next day, May 28, 2012, officers obtained an arrest warrant for Mr. Brown and a search warrant for his residence at 4854 Rusty Nail Point #102.  No action was taken by the Colorado Springs Police Department to further investigate the accusations contained within the arrest warrant.   Later that same day, officers from the Colorado Springs Police Department again tried to contact Mr. Brown at his residence with no success.

28.     On the morning of May 29, 2012, Sgt. Vargason of the Colorado Springs Police Department was able to contact Mr. Brown via text message.  Mr. Brown indicated he wanted to talk with his attorney.  Sgt. Vargason told Mr. Brown that he would come to his home with one other officer and his attorney. Throughout May 28, 2012 and May 29, 2012, members of the Colorado Springs Police Department were told by Mr. Brown's friends and family that he would turn himself into police if just given a little time.

29.     Rather than approaching Mr. Brown's home as Sgt. Vargason had promised, with only one other officer and Mr. Brown's attorney or giving Mr. Brown a little time to turn himself in, a decision was made by Vince Niski, Skip Arms, Salvatore Fiorillo, and Ron Sheppard to have the Tactical Enforcement Unit accomplish a dynamic entry and execute the search and arrest warrants at 4854 Rusty Nail Point #102.  This decision was done with absolutely no consideration as to the crime's severity, the potential threat posed by Mr. Brown, or whether Mr. Brown had made any attempts to resist or evade arrest.

30.     In the late afternoon, on May 29, 2012, members of the Colorado Springs Police Department began evacuating Mr. Brown's neighbors.

31.     Approximately an hour later (6:10 p.m.), members of the Colorado Springs Tactical Enforcement Unit descended on 4854 Rusty Nail Point like a descending army. Officers set up a perimeter surrounding Mr. Brown's home and a tank plowed over Mr. Brown's fence.

32.     Suffering from PTSD he received from his military service in Bosnia and Somalia, Mr. Brown retreated to his bed with a bullet proof vest, gas mask, ear plugs, but no weapon of any kind within reach.

33.     The siege of 4854 Rusty Nail Point #102 began with a constant verbal barrage demanding Mr. Brown's immediate surrender. At one point, Sergeant Sheppard declared to Mr. Brown, "We are not going away, come out now, I will guarantee your safety if you come out, if you do not come out I cannot guarantee your safety."

34.     The barrage continued unabated for a little under 20 minutes. When Mr. Brown failed to respond, Sergeant Ronald Sheppard proceeded by flooding the home with tear gas in an effort to gas out the former army staff sergeant. More than twenty canisters of tear gas were shot by Officers Sandoval and Leeper into Mr. Brown's home.

35.     At around 7:19 p.m., Officer Van Oonyen, on Sergeant Sheppard's command, detonated a bomb on top of the front west exterior window well grate. Simultaneously, Officer Carter detonated a bomb on the window grate on the southwest window. The bomb, exploded by Officer Carter, created a gap in the grate. Through the resulting gap, members of TEU tried unsuccessfully to flood Mr. Brown's basement with tear gas.

36.     Shortly thereafter, a large robot, equipped with a water cannon, blew in the front of Mr. Brown's door. The robot observed no movement inside the home. The large robot would not fit down the stairwell leading to the basement. A second, smaller robot was deployed. The small robot malfunctioned on the stairs leading to the basement and had to be retrieved by the larger robot.

37.     Around 11:30 p.m, the TEU had Port-a-Potties brought to the scene. Skip Arms, Vince Niski, Sgt. Russell, Lt. Fiorillo, and Sgt. Sheppard were advised that a medium sized robot was on its way from Fort Carson. It was believed that this robot would be able to navigate the stairs to the basement, enabling the officers to determine Mr. Brown's location and potential threat level.

38.     Rather than wait for the medium sized robot from Fort Carson, a decision was made to utilize a bomb. The bomb would be used to blow a hole in the floor of Mr. Brown's home in order to allow access to Mr. Brown's basement. This reckless decision was made with the deliberate indifference to the safety of Mr. Brown.

39.     Officer Carter first came up with the idea of blowing a hole in the floor of Mr. Brown's home.  Sergeant Sheppard then inquired of Officer McPike about blowing a hole in the floor of Mr. Brown's home.  Officer McPike responded that neither he nor any other member of the bomb squad had ever done a breech of a wood floor either in training or operationally.

40.     Sgt. Arseneau was brought in to consult about using a bomb to blow a hole in the floor of Mr. Brown's home.  Sgt. Arseneau advised Skip Arms, Vince Niski, Sgt. Russell, Lt. Fiorillo, and Sgt. Sheppard that anyone under the explosion would most likely be injured. Officer Betts also advised them that blowing a hole in the floor would cause a lot of damage because it would take a large charge to get through the flooring.

41.     With knowledge of the grave risk of injury to Mr. Brown, Skip Arms, Vince Niski, Sgt. Russell, Lt. Fiorillo, and Sgt. Sheppard made the decision to proceed with blowing a hole in the floor.

42.     Sgt. Arseneau assisted Officers McPike, Carter, Betts and Mahon in building the bomb.  The bomb was set inside Mr. Brown's home by Officers Carter, Betts, and Van Oonyen.

43.     Skip Arms, Vince Niski, Sgt. Russell, Lt. Fiorillo, and Sgt. Sheppard sitting in the command post gave the order for the bomb to be detonated.  Officer Betts then detonated the bomb.

44.     The explosion ripped a huge hole in Mr. Brown's floor.  Unfortunately, Mr. Brown was lying in his bed directly beneath the blast.  Large fragments of wood were embedded in Mr. Brown's leg and the weight of the floor falling on him fractured his left tibia.  The explosion was so powerful it blew out all of the windows of Mr. Brown's home.

45.     Officer McPike then directed the large robot to the hole in the floor.  Using a camera, Officer McPike was able to visualize Mr. Brown lying in pain in his bed.  Despite visual confirmation of Mr. Brown's condition, Colorado Springs Police Department lingered more than 30 minutes before allowing medical personnel to respond and aid Mr. Brown.  Apparently, C.S.P.D. was waiting for the medium-sized robot from Fort Carson to clear the scene.

46.     Once the medium-sized robot was able to clear the scene and medical personal were able to render aid to Mr. Brown, a search of the area surrounding Mr. Brown was conducted.  The area was checked for weapons, wires, or booby traps.  None were found.

47.     Mr. Brown was then taken to the hospital.  Mr. Brown remained in the hospital for two weeks receiving treatment for the injuries he sustained in the blast.  Mr. Brown's injuries

remain extensive and the damage and scars to his body are permanent.  He suffered severe mental anguish and lost his home.

## FIRST CLAIM FOR RELIEF

### (§1983 Fourth Amendment Violation - Excessive Force)

48.     Plaintiffs hereby incorporate all other paragraphs of the Complaint as if fully set forth herein.

49.     The actions of Defendants as described herein, while acting under the color of state law, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his rights to freedom from unreasonable seizures through excessive force as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. § 1983, in that the tactics employed the TEU in general, and specifically the use of a bomb to blow up Mr. Brown's home was clearly excessive and caused Mr. Brown severe injury.   Further, any reasonable law enforcement officer knew or should have known of this clearly established right at the time of the Plaintiff's injuries.

50.     Vince Niski, Skip Arms, Salvatore Fiorillo, Sgt. Russell, Ronald Sheppard, Chris Arseneau, Dan Carter, William Betts, Robin McPike, Shawn Mahon, and Marcus Van Oonyen unlawfully used excessive force in exercising search warrant.

51.     Defendants' actions, as describe herein, were objectively unreasonable in light of the facts and circumstances confronting them.

52.     Defendants' actions, as described herein, were motivated by intent to harm Plaintiff.

53.     Defendants' actions, as described herein, were undertaken intentionally, willfully, and wantonly.

54.     Defendants' conduct violated clearly established rights belonging to Plaintiff of which reasonable law enforcement officers knew or should have known.

55.     Defendants Colorado Springs and Carey failed to properly hire, train, supervise and/or discipline members of its police department regarding the proper use of force when executing a search warrant.

56.     This inadequate hiring, training and/or supervision results from a conscious or deliberate choice to follow a course of action from among various alternatives available to the Defendant's Colorado Springs and Carey.

57.     Said failure to properly hire, train and supervise was the moving force behind and proximate cause of Defendants use of excessive force against Plaintiff, and constitutes an unconstitutional policy, procedure, custom, and/or practice.

58.     Plaintiff has been and continues to be damaged by Defendants use of excessive force in executing the search of his residence.

59.     The acts or omissions of each Defendant, including the unconstitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Plaintiff's damages.

60.     As a direct result of Defendants' unlawful action as described herein, Plaintiff suffered actual physical harm, emotional, and economic injuries in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (42 U.S.C. § 1983 – Constitutional Failure to Train and/or Supervise)

(Against Defendant's Colorado Springs, Carey, Niski, Arms, and Fiorillo)

61.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

62.     Defendants Colorado Springs, Carey, Niski, Arms, and Fiorillo developed and maintained law enforcement related policies, procedures, customs, and/or practices exhibiting or resulting in a deliberate indifference to the Fourth and Fourteenth Amendment protected constitutional rights of persons in the City of Colorado Springs, which proximately caused the violation of Plaintiff's constitutional rights. Specifically Colorado Springs, Carey, Niski, Arms, and Fiorillo have engaged in a reckless pattern of using the TEU to execute routine search warrants.

63.     Defendants Colorado Springs, Carey, Niski, Arms, and Fiorillo maintained policies, procedures, customs, and/or practices that tacitly or explicitly authorized unlawful entries executed with excessive force, and failures to intervene, by officers of the Colorado Springs Police Department, including but not limited to, the failure to train on at least the

following: respecting the Fourth and Fourteenth Amendments rights of citizens to be secure from excessive force.

64.     In light of the duties and responsibilities of those law enforcement officers that participate in executing searches of citizens homes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional rights such as those describe herein.

65.     Defendants Colorado Springs, Carey, Niski, Arms, and Fiorillo are liable for their failure to train and to appropriately supervise officers of the Colorado Springs Police Department.

66.     The inadequate training and supervision provided by Defendants Colorado Springs, Carey, Niski, Arms, and Fiorillo  resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available.

67.     If any training was given to Sgt. Russell, Ronald Sheppard, Chris Arseneau, Dan Carter, William Betts, Robin McPike, Shawn Mahon, and Marcus Van Oonyen concerning the rights of citizens to be secure from excessive force, Defendants Colorado Springs and Carey knew or should have known that such training was reckless or grossly negligent and that misconduct in this area was inevitable.

68.     Defendants Colorado Springs and Carey have a duty to protect the constitutional rights of the members of the public from violations of those rights by members of law enforcement.

69.     As a direct and proximate cause and consequence of Defendants Colorado Springs, Carey, Niski, Arms, and Fiorillo's failure to train and supervise, Plaintiff suffered injuries, damages, and loses as set forth above.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in their favor and against the Defendants, and grant:

(a)     Appropriate declaratory and other injunctive and/or equitable relief;

(b)     Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)     All economic losses on all claims allowed by law;

(d)     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)     Attorney fees and the costs associated with this action;

(f)     Pre and post-judgment interest at the lawful rate; and

(g)     Any further relief that this court deems just and proper, and any other relief as allowed by law.


**Plaintiff herein demands a trial by jury on all issues so triable.**

Dated this 26th of August 2014.


Respectfully submitted,

**BARKER & TOLINI, P.C.**


By:_s/ Joshua Tolini_____

Joshua N. Tolini
720 South Tejon Street
Colorado Springs, CO 80903
719-227-0230
FAX: 719-227-0964