IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 14-cv-01471-RPM

RONALD DWAYNE BROWN,

    Plaintiff,
v.

THE CITY OF COLORADO SPRINGS,
PETER CAREY, Chief of Police, Colorado Springs Police Department, in his official capacity,
VINCE NISKI, Deputy Chief of Police, Colorado Springs Police Department, individually and in his official capacity,
Lt. SALVATORE FIORILLO III, Unite Commander, Tactical Enforcement Unit (Swat Team), Colorado Springs Police Department, individually and in his official capacity,
Sgt. RONALD SHEPPARD, Colorado Springs Police Department, individually,
Sgt. CHRIS ARSENEAU, Colorado Springs Police Department, individually,
Officer DAN CARTER, Colorado Springs Police Department, individually,
Officer WILLIAM P. BETTS, Colorado Springs Police Department, individually,
Officer ROBIN McPIKE, Colorado Springs Police Department, individually,
Officer SHAWN MAHON, Colorado Springs Police Department, individually,
Officer MARCUS VAN OONYEN, Colorado Springs Police Department, individually,

    Defendants.
_____

ORDER DENYING SUMMARY JUDGMENT
_____

In this civil action Ronald Dwayne Brown seeks damages pursuant to 42 U.S.C. § 1983 from the defendants for injuries he sustained when he was arrested on May 30, 2012, claiming that the police used excessive force against him in violation of the Fourth Amendment to the United States Constitution.  After the completion of discovery, the plaintiff moved for partial summary judgment on his claim of liability.  (Doc. 40).  The defendants moved for summary judgment of dismissal, asserting qualified immunity for the individual defendants and insufficient evidence to support municipal liability of the City of Colorado Springs.  (Doc. 44).

There are some areas of disputed fact but there is sufficient evidence presented in the exhibits and deposition transcripts submitted with the briefing on these motions for finding that the following statements may be found by a jury after trial.

On Sunday afternoon, May 27, 2012, Colorado Springs Police Officer Timothy Wihera responded to 4887 Rusty Nail Point #202 in Colorado Springs, Colorado, on a dispatch call of a reported disturbance. Upon arrival he encountered a group of people and was told, "That crazy white guy shot at us." He was told that the person with a gun entered Unit #102 of the building, 4854 Rusty Nail Point. Officer Wihera called for backup and when Officer Theron Charles arrived, they approached that unit with weapons drawn and called for any occupants to come out with hands up in the air. There was no response.

Other officers arrived, one of whom was Officer Roger Vargason. Officer Wihera obtained information from those present at the incident and identified the suspect as Ronald Brown who had previous contact with the police in 2010 when he was determined to be suicidal. A cell phone number for Mr. Brown was obtained. Officer Collins called that number and left voice mail messages to call back. There was no response.

The officers knocked at the front door and announced their presence multiple times. The police had set up containment around the residence but decided to leave at 8:44 p.m. being unable to verify that Mr. Brown was inside and the area was heavily populated.

On Monday, May 28, 2012, Officer Collins received text messages from Mr. Brown defending his action and saying:

> I feared for my life. I want my attorney lawyer up or Balls to the, drop the hammer. Your call.

The officer responded:

> Ron, we need to work through this. I will come to you with one officer and your lawyer. Call me at 499-1999.

There was no response from Mr. Brown.

In the early afternoon, an anonymous phone caller informed the police that Mr. Brown was in his residence.

Officers conducted surveillance at the residence and saw no movement. Contacts were made with Lucy Boyer, a roommate, who informed Officer Collins that Mr. Brown was a combat veteran suffering from PTSD who went into "war mode" and it would be a blood bath if the police attempted his arrest. Mary Hankins, another friend of the plaintiff, confirmed that information and said that he had an attitude about the police as a result of an incident in 2010.

Mr. Brown's mother, Pauline Brown, was contacted. She said that she communicated with her son by text messaging, confirmed that he was being treated for PTSD, and said that he had recently been drinking heavily.

Arrest and search warrants were signed on May 28, 2012. Research of police records revealed that Mr. Brown had multiple weapons. On Tuesday, May 29, 2012, Officer Pring talked with Ms. Boyer who again emphasized the PTSD and that she had sent a recent text message to Mr. Brown and told the officer that if the police attempted his arrest they would be met with force.

Because this was assessed as a high risk arrest, the Tactical Enforcement Unit ("TEU") was given the assignment to execute the warrants. The Regional Explosives

Unit ("bomb squad") was enlisted as well.

At an initial briefing, the plan was to make this a "contain and call out" operation. At about 5:04 p.m. Brian Sheridan, a friend of Mr. Brown, told Officer Pring that he had received a text message from Mr. Brown at 9:00 a.m. and that he seemed very upset. Mr. Sheridan said he thought Mr. Brown was in the basement, that Mr. Sheridan thought he would surrender and that Mr. Brown's text message ended with an acronym that meant "see you on the other side."

The police began the operation at approximately 5:15 p.m.  The nearby residences were evacuated.  Armored vehicles were placed in front of and behind Unit 102.  Efforts were made to contact Mr. Brown by phone and text messages with no response.  Bullhorn announcements were made repeatedly asking for a peaceful surrender. CS gas was launched into the main level of the unit repeatedly and there was a failed attempt to remove a metal grate on a window well to the basement.

The police had two robots on the scene.  A large robot, the Andros, operated remotely by Officer McPike, breached the front door at 7:38 p.m. and it went into the main level, making an announcement and giving a camera view showing no one was present.

At 9:52 p.m. a hole was punched into the exterior garage door by the robot and the plaintiff's vehicle was seen in the garage.

The Point Man, a smaller robot, was started down stairs to the basement. Contact with it was lost and it was retrieved by the large Andros robot.  The police inspected a neighboring residence with the same floor plan in an attempt to understand

where Mr. Brown would be, having received information that he had fortified a "man cave" in the basement, storing weapons, ammunition and military tactical gear.

The police contacted an Army unit at Fort Carson to obtain a medium sized robot which could navigate the stairs and open doors in the basement. Without waiting for it to arrive, the police decided to use an explosive device to blow a hole in the floor of the main room to enable a visualization of the bedroom below it. They did not think that Mr. Brown was in that room, expecting that he had barricaded a back room or walk-in closet where he was assumed to be ready to attack any officers approaching him.

A prepared explosive charge called a Gryphon was placed about three feet inside the front door. It was detonated at 11:55 p.m. blowing a 16-inch hole into the basement ceiling with debris falling onto Mr. Brown who was under it on a bed.

The robot camera showed Mr. Brown under a blanket. Using a communication device on the robot, the police instructed Mr. Brown to remove the helmut, gas mask, Kevlar vest and ear plugs he was wearing.

When the Army robot, the Talon, arrived, it was deployed down the stairs and opened the unlocked basement door. After the robot confirmed that there were no booby traps, the officers arrested Mr. Brown and gave emergency medical aid for the injuries he sustained as a result of the explosion.

The defendant officers moved for summary judgment of dismissal on the individual claims against them, claiming qualified immunity because there is no clearly established authority holding that the "use of an explosive device in the course of a protracted standoff with a barricaded dangerous suspect to port a hole to gain access and a visual of an area is clearly unconstitutional." (Doc. 44, p. 31). They also contend

that their actions were reasonable under the circumstances which were threatening to the officers.

To prove a violation of the Fourth Amendment by the use of excessive force, the plaintiff must establish that a reasonable police officer in the same circumstances would know that he was violating the plaintiff's protections provided by the Fourth Amendment.

The defendants are correct in that there is no precedent for the claims in this case. In fact, there is no precedent in the experience of the Colorado Springs Police Department for the use of an explosive device in this manner. To be clearly established law it is not necessary that the specific acts in question have not previously been held unlawful. Officers can still be held on notice that their conduct violates the Constitution even in novel factual circumstances. *McInerney v. King,* 791 F.3d 1224, 1237 (10th Cir. 2015).

These are such circumstances. The reasonableness of the use of the explosive device must be considered in the full context of the case. This stand-off went for eight hours – through the night and into the early morning of the next day. The police officers knew of the vulnerability of the plaintiff and yet they were creating a war zone scene which would be expected to trigger a reaction by a veteran with PTSD. They did not wait for a person qualified to negotiate with Mr. Brown although it is questionable whether it would be reasonable to expect him to respond. What is more significant is the failure to wait for the Army robot which ultimately did what was required to enter the basement without exposing the officers. The explosive device would not have been needed. There has been no explanation for that failure.

Accepting that the officers believed that Mr. Brown was not in the room under the blast it is not apparent what they expected to gain by opening the hole to see in the room.

The plaintiff moved for partial summary judgment on liability but that would require this Court to make factual determinations that should be made by the jury, specifically as to which officers should be held liable in this collective conduct.

The defendant City of Colorado Springs has denied municipal liability. The plaintiff had shown sufficient evidence to support submission to a jury that there was a Fourth Amendment violation arising under circumstances that police officers usually face and that the training of the officers on the use of this possible lethal force was inadequate showing deliberate indifference of the City towards the safety of the persons with whom they come into contact. That is sufficient to include the City as a defendant at trial. It is now

ORDERED that the plaintiff's motion for partial summary judgment (Doc. 40) and the defendants' motion for summary judgment (Doc. 44) are denied.

DATED: April 19th, 2016

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge